ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| **CENTRO OTOLÓGICO DE PUERTO RICO; MIGUEL LASALLE LÓPEZ; OTROS**<br><br>Recurridos<br><br>v.<br><br>**PUERTO RICO CABLE ACQUISITION COMPANY, LLC H/N/C CHOICE CABLE TV; LIBERTY CABLEVISION OF PUERTO RICO, LLC**<br><br>Peticionarios | TA2026CE00164 | **CERTIORARI** procedente del Tribunal de Primera Instancia, Sala Superior de **Mayagüez**<br><br>Civil Núm.: **ISCI201700843**<br><br>Sobre: Sentencia Declaratoria Bajo La Regla 20.2(B) de las de Procedimiento Civil Reclamación bajo la Ley de Telecomunicaciones de Puerto Rico, Núm. 213 de 12 de septiembre de 1996, 27 LPRA Sec. 265 y la Ley de Acción de Clase por Consumidores de Bienes y Servicios, según Enmendada, 32 LPRA Sec. 3341 |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Boria Vizcarrondo, Jueza Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 27 de abril de 2026.

Comparece ante nos Liberty Communications of Puerto Rico LLC (Liberty) y Puerto Rico Cable Acquisition Company, Inc. h/n/c Choice Cable TV (Choice) (con conjunto, parte peticionaria) y nos solicitan que revoquemos una *Resolución y Orden* emitida el 24 de septiembre de 2025 por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI).[1] Mediante dicho dictamen, el foro

---

[1] Sistema Unificado de Manejo y Administración de Casos (SUMAC) del Tribunal de Apelaciones, Apéndice 21. Notificada y archivada en autos el 24 de septiembre de 2025.

primario denegó la *Moción de sentencia sumaria* presentada por la parte peticionaria y ordenó la continuación de los procedimientos.[2]

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* y confirmamos el dictamen recurrido.

## I.

El presente caso tiene su génesis el 10 de agosto de 2017 cuando el Centro Otológico de Puerto Rico, el señor Miguel Lasalle López, la señora Lourdes Morales Rodríguez y el señor Alfredo Irizarry Irizarry (en conjunto, parte recurrida) presentaron una demanda de clase contra la parte peticionaria en concepto de una sentencia declaratoria bajo la Regla 20.2(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 20.2(b); y una reclamación bajo la *"Ley de Telecomunicaciones de Puerto Rico de 1996"* (Ley de Telecomunicaciones), Ley Núm. 213 del 12 de septiembre de 1996, según enmendada, 27 LPRA secs. 265 *et seq.*; y la *Ley de Acción de Clase por Consumidores de Bienes y Servicios*, Ley Núm. 118 del 25 de junio de 1971, según enmendada, 32 LPRA secs. 3341 *et seq.*[3] En síntesis, la parte recurrida sostuvo que se vio en la obligación de pagar un cargo ilegal llamado "cargo por factura" y/o "billing charge" cobrado por Choice -empresa posteriormente adquirida por Liberty- como consecuencia de haber recibido sus facturas en papel y no electrónicamente. Específicamente, alegó que, desde aproximadamente enero del 2010, la parte peticionaria le cobró una cantidad mensual que ascendió de $1.50 a $4.00. Por tal razón, la parte recurrida suplicó del TPI una sentencia declaratoria determinando la ilegalidad del cobro; y ordenando el pago de una suma no menor de $70,000,000.00 por las partidas cobradas por la parte peticionaria, una suma no menor de $70,000,000.00 en

---

[2] *Íd.*, Apéndice 7.
[3] *Íd.*, Apéndice 1.

concepto de daños, una cuantía razonable de honorarios de abogado, al igual que el pago de intereses y las costas del proceso.

Luego de múltiples trámites procesales, el 31 de agosto de 2022, la parte peticionaria radicó una *Contestación a demanda de clase* donde negó las alegaciones y levantó sus defensas afirmativas.[4]

Posteriormente, la parte peticionaria presentó una *Moción de Sentencia Sumaria* el 24 de febrero de 2025.[5] Suplicó por la procedencia de una sentencia sumaria contra la parte recurrida, empero a su favor, resolviendo que el cobro por facturación en papel no estaba vedado por ley ni por disposición alguna y/o contaba con el consentimiento expreso o tácito de la parte recurrida respecto al referido cargo. Asimismo, expuso que no procedían las causas de acción en equidad incluyendo enriquecimiento injusto ni eran de aplicación los estatutos ni marcos regulatorios de telecomunicación en el presente caso. De este modo, la parte peticionaria solicitó la desestimación de todas las causas de acción radicadas en su contra.

Por su lado, la parte recurrida presentó una *(1) Oposición a moción de sentencia sumaria; y (2) solicitud para que se dicte resolución sumaria a favor de la clase demandante con respecto a los daños que no están en controversia* el 16 de mayo de 2025.[6] Por medio de esta, se opuso a la solicitud de sentencia sumaria de la parte peticionaria, empero, solicitó del foro *a quo* un dictamen sumario estableciendo que Choice generó la suma de $8,746,529 en concepto de cobro por el cargo de facturación en papel desde diciembre de 2011 hasta el 3 de junio de 2015.

Ulteriormente, el 3 de julio de 2025, el foro primario emitió una *Resolución y/u orden* determinando haber aceptado la solicitud

---

[4] *Íd.*, Apéndice 5.
[5] *Íd.*, Apéndice 7.
[6] *Íd.*, Apéndice 10.

de sentencia sumaria radicada por la parte peticionaria a los únicos efectos de aclarar el siguiente hecho: "[l]a parte demandada acept[ó] que entre los años 2011 al 2015 cobró la cantidad de $8,746,529 como cargo por factura impresa".[7] Sin embargo, determinó que el mismo no se admitiría como un daño probado pues, de lo contrario, estaría adjudicando la controversia sin evaluar la prueba. Por ende, determinó adjudicar los daños en el juicio en su fondo y no sumariamente. De igual modo, concedió a la parte peticionaria un término de veinte (20) días para exponer su postura en torno a lo expresado por el tribunal y la moción de la parte recurrida.

El 29 de julio de 2025, la parte peticionaria presentó una *Moción en cumplimiento con resolución y/u orden* aceptando el antedicho hecho como incontrovertido. Específicamente, lo admitió como la cantidad cobrada por Choice en concepto del cargo por factura impresa, más no como una admisión y/o estipulación sobre la existencia ni cuantía de los daños reclamados por la parte recurrida.[8]

Después de varios trámites procesales, el 24 de septiembre de 2025, el foro primario emitió el dictamen recurrido donde resolvió que no existía controversia sobre si, entre los años 2011 al 2015, la parte peticionaria aceptó haber cobrado la cantidad de $8,746.529 como el cargo en cuestión.[9] Sin embargo, identificó hechos controvertidos incluyendo la existencia de controversia en cuanto a si dicha cuantía constituyó un daño sufrido por la parte recurrida. Así, denegó la solicitud de sentencia sumaria de la parte peticionaria y ordenó la continuación de los procedimientos.

El 9 de octubre de 2025, la parte peticionaria presentó una *Moción de reconsideración y/o en solicitud de determinaciones de*

---

[7] *Íd.*, Apéndice 13. Notificada y archivada en autos el 7 de julio de 2025.
[8] *Íd.*, Apéndice 14.
[9] *Íd.*, Apéndice 21. Notificada y archivada en autos el 24 de septiembre de 2025.

*hechos y conclusiones de derecho adicionales,*[10] denegada por el TPI el 12 de enero de 2026.[11]

Insatisfecha, la parte peticionaria radicó ante nos un auto de *certiorari* el 11 de febrero de 2026 donde señaló al TPI por la comisión de los siguientes errores:

> **PRIMER SEÑALAMIENTO DE ERROR: EL TPI ERRÓ COMO CUESTIÓN DE DERECHO AL NO CONCLUIR DE MANERA SUMARIA QUE EL CARGO POR EL ENVÍO DE LA FACTURA EN PAPEL ES LEGAL PUES NO ESTÁ PROHIBIDO, REGULADO NI LIMITADO POR LEY O REGLAMENTO ALGUNO.**
>
> **SEGUNDO SEÑALAMIENTO DE ERROR: EL TPI ERRÓ AL NO DESESTIMAR SUMARIAMENTE LA RECLAMACIÓN DE INCUMPLIMIENTO CONTRACTUAL, PUES EXISTIÓ CONSENTIMIENTO EXPRESO O TÁCITO POR LOS SUSCRIPTORES DE CHOICE AL CARGO POR FACTURACIÓN IMPRESA.**
>
> **TERCER SEÑALAMIENTO DE ERROR: EL TPI ERRÓ AL NO REALIZAR DETERMINACIONES DE HECHOS NO CONTROVERTIDOS ADICIONALES CUANDO LOS DEMANDANTES NO CUMPLIERON CON LOS REQUISITOS DE LA REGLA 36.3(C) DE PROCEDIMIENTO CIVIL.**
>
> **CUARTO SEÑALAMIENTO DE ERROR: EL TPI ERRÓ AL NO DESESTIMAR DE FORMA SUMARIA LA RECLAMACIÓN DE ENRIQUECIMIENTO INJUSTO CUANDO ES COMPLETAMENTE INCOMPATIBLE CON LA TEORÍA DE LOS DEMANDANTES.**

Por su lado, la parte recurrida presentó un *Alegato en oposición al recurso de certiorari* el 13 de marzo de 2026.

## II.

## A.

El auto de *certiorari* es el vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones realizadas por un foro inferior y cuya expedición descansa en la sana discreción del tribunal. *Rivera v. Arcos Dulces,* 212 DPR 194, 207 (2023); *McNeil Healthcare, LLC v. Municipio de Las Piedras,* 206 DPR 391, 403 (2021). La característica distintiva del auto de *certiorari* "se asienta

---

[10] *Íd.*, Apéndice 22; véase además, *Íd.*, Apéndice 27.
[11] *Íd.*, Apéndice 2. Notificada y archivada en autos el 12 de enero de 2026.

en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. El concepto *discreción* necesariamente implica la facultad de elegir entre diversas opciones". *IG Builders v. BBVAPR*, 185 DPR 307, 338 (2012) (énfasis en el original). No obstante, " 'en el ámbito judicial, la discreción no debe hacer abstracción del resto del Derecho. . . . Es decir, [la] *discreción* es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera' ". *IG Builders v. BBVAPR, supra*, pág. 338 (citando a *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009)) (énfasis en el original); *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008).

En ese sentido, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025), señala los criterios que debemos tomar en consideración al evaluar si procede expedir el auto de *certiorari*. *BPPR v. SLG Gómez-López*, 213 DPR 314, 336-337 (2023). La referida regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Lo anterior impone al Tribunal de Apelaciones la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro. Por tanto, de no estar presente ninguno de los criterios esbozados, procede que esta Curia se abstenga de expedir el auto solicitado. *Torres Martínez v. Torres Ghigliotty, supra*, págs. 96-97.

**B.**

La Regla 36 de Procedimiento Civil, *supra*, R. 36, establece el mecanismo procesal de la sentencia sumaria. El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los que no existe controversia real y sustancial de hechos materiales y que no requieren ventilarse en un juicio plenario. *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Bobé et al. v. UBS Financial Services*, 198 DPR 6, 19-20 (2017); *SLG Zapata-Rivera v. JF Montalvo*, 189 DPR 414, 430 (2013). Mediante este procedimiento, una parte puede solicitar que el tribunal dicte sentencia sumaria sobre la totalidad o parte de la reclamación, y así se promueve la descongestión de calendarios. *Vera v. Dr. Bravo,* 161 DPR 308, 331-332 (2004).

De igual modo, el mecanismo de sentencia sumaria solo está disponible para la disposición de aquellos casos que sean claros; cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda; y que solo reste por disponer las controversias de derecho existentes. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911-912 (1994). Al evaluarse los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia, consciente en todo momento de que su determinación puede privar a una de las partes de su día en corte. *León Torres v.*

*Rivera Lebrón,* 204 DPR 20, 44 (2020). De la mano con este precepto del debido proceso de ley, el juzgador deberá utilizar el principio de liberalidad a favor del opositor de la moción, lo que implica que, de haber dudas sobre la existencia de controversias de hechos materiales, entonces deberán resolverse a favor de la parte que se opone a la moción de sentencia sumaria. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 138 (2015); *Ramos Pérez v. Univisión*, 178 DPR 200, 216-217 (2010).

Además, nuestro máximo foro ha establecido que no es aconsejable dictar una sentencia sumaria cuando existe controversia sobre asuntos de credibilidad o que envuelvan aspectos subjetivos tales como la intención, los propósitos mentales o la negligencia. *Aponte Valentín v. Pfizer Pharmaceuticals, LLC*, 208 DPR 263, 278 (2021). Sin embargo, "nada impide que se utilice el mecanismo de sentencia sumaria en reclamaciones que requieran elementos subjetivos o de intención cuando surge de los documentos que se considerarán en la solicitud de sentencia sumaria la inexistencia de una controversia en torno a los hechos materiales". *Cruz Cruz v. Casa Bella Corp.*, 213 DPR 980, 993-994 (2024).

Para prevalecer en una moción de sentencia sumaria, su promovente tiene que establecer su derecho con claridad y debe demostrar que no existe controversia en cuanto a ningún hecho material, o sea, ningún elemento de la causa de acción. *Meléndez González et al. v. M. Cuebas, supra*, pág. 110. Por hechos materiales se entienden aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo. *Ramos Pérez v. Univisión, supra*, pág. 213. Además:

> [U]na controversia no es siempre real o sustancial, o genuina. La controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. La fórmula, debe ser, por lo tanto, que la moción de sentencia sumaria

adecuadamente presentada sólo puede negarse si la parte que se opone a ella presenta una oposición basada en hechos que puedan mover a un juez a resolver a su favor. Si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria.

*Ramos Pérez v. Univisión, supra,* págs. 213-214 (*citando a* P. E. Ortiz Álvarez, *Hacia el uso óptimo de la sentencia sumaria,* 3 (Núm. 2) Forum 3, 8 (1987)).

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia que sea real en cuanto a algún hecho material a la controversia y, en ese sentido, no es cualquier duda la suficiente para derrotar la solicitud. *Meléndez González et al. v. M. Cuebas, supra,* pág. 110. En efecto, la duda debe ser tal que permita concluir que existe una controversia real y sustancial sobre los hechos materiales. *Meléndez González et al. v. M. Cuebas, supra,* pág. 110 (*citando a Ramos Pérez v. Univisión, supra,* pág. 214). Además, la parte promovida tiene que puntualizar los hechos propuestos que pretende controvertir, haciendo referencia a la prueba específica que sostiene su posición. *León Torres v. Rivera Lebrón, supra,* pág. 44. Es decir, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa". *León Torres v. Rivera Lebrón, supra,* pág. 44. De esta forma, no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. *SLG Zapata-Rivera v. JF Montalvo, supra,* pág. 453; *Ramos Pérez v. Univisión, supra,* pág. 215; *Cruz Marcano v. Sánchez Tarazona,* 172 DPR 526, 550 (2007).

Entretanto, la Regla 36.3 de Procedimiento Civil, *supra,* R. 36.3, establece el procedimiento para la consideración de la moción de sentencia sumaria, así como el contenido de la moción y de la contestación de la parte promovida. Respecto a la moción solicitando que se dicte una sentencia sumaria, la Regla 36.3(a) de

Procedimiento Civil, *supra*, R. 36.3(a), dispone que tendrá que desglosar lo siguiente:

> (1) una exposición breve de las alegaciones de las partes;
>
> (2) los asuntos litigiosos o en controversia;
>
> (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;
>
> (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
>
> (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y
>
> (6) el remedio que debe ser concedido.

Por otra parte, la Regla 36.3(b) de Procedimiento Civil, *supra*, señala que la contestación a la moción de sentencia sumaria debe contener, además de los sub incisos (1), (2) y (3) del inciso (a): una relación de los hechos esenciales y pertinentes que están en controversia, con referencia a los párrafos enumerados por la parte promovente y con indicación de la prueba en la que se establecen esos hechos; una enumeración de los hechos que no están en controversia; y las razones por las que no se debe dictar la sentencia, argumentando el derecho aplicable.

De otra parte, en *Meléndez González et al. v. M. Cuebas, supra,* el Tribunal Supremo delineó el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de Procedimiento Civil, *supra,* y los criterios que la jurisprudencia le exige al foro

primario. *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 115. Asimismo, debe examinar el expediente de la manera más favorable hacia la parte promovida, llevando a cabo todas las inferencias permisibles a su favor. Ahora bien, reconoció que el foro apelativo está limitado, toda vez que no podrá tomar en consideración evidencia que las partes no presentaron ante el foro primario, ni podrá adjudicar los hechos materiales en controversia.

En segundo lugar, prescribió que el Tribunal de Apelaciones debe revisar que tanto la moción en solicitud de sentencia sumaria, como la oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*. *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 118.

En tercer lugar, mandató que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones debe examinar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4. *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 118.

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el derecho. *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 119.

### III.

En el caso de marras, nos toca dirimir si el foro primario incidió al no resolver sumariamente que el cargo por la factura impresa era legal, por no desestimar sumariamente las reclamaciones de incumplimiento contractual ni de enriquecimiento injusto, y al no realizar determinaciones de hechos incontrovertibles adicionales.

Según la *Resolución* recurrida, el TPI denegó la solicitud de sentencia sumaria presentada por la parte peticionaria dado a que existía controversia en cuanto a si la suma de $8,746,529, cobrada por la parte peticionaria entre los años 2011 al 2015, como cargo por factura impresa, constituyó un daño sufrido por la parte recurrida.

Inconforme, la parte peticionaria arguyó como primer planteamiento de error que el foro primario incidió al no concluir que el cargo por factura impresa no estaba prohibido por ley ni por reglamento alguno. Bajo el segundo señalamiento, sostuvo que el TPI incidió al no desestimar sumariamente la reclamación de incumplimiento contractual, pues existió consentimiento expreso o tácito por los suscriptores de Choice respecto al cargo por factura. También adujo como cuarto planteamiento de error que el TPI incidió al no desestimar sumariamente la acción de enriquecimiento injusto cuando era completamente incompatible con la teoría de la parte recurrida. Por último, como tercer señalamiento de error, la parte peticionaria señaló al foro *a quo* por no realizar determinaciones de hechos incontrovertibles adicionales cuando la parte recurrida incumplió con los requisitos de la Regla 36.3(c) de Procedimiento Civil, *supra*, R. 36.3(c).

Tras un análisis objetivo y cuidadoso, resolvemos que el foro primario no cometió los señalamientos de error.

Conforme a *Meléndez González et al. v. M. Cuebas, supra*, el primer paso del estándar de revisión de las solicitudes de sentencia sumaria conlleva revisar *de novo* el petitorio sumario junto a los anejos y el escrito en oposición a la solicitud de sentencia sumaria. Al amparo del segundo pilar de dicho análisis, debemos revisar que tanto la petición de sentencia sumaria como su oposición cumplen con los requisitos de la Regla 36 de Procedimiento Civil, *supra*. *Meléndez González et al. v. M. Cuebas, supra*, pág. 118. En efecto,

luego de un examen cuidadoso de la *Moción de sentencia sumaria* presentada por la parte peticionaria y la oposición radicada por la parte recurrida, colegimos que cumplen sustancialmente con los requisitos de forma de la Regla 36 de Procedimiento Civil, *supra.*

Atendidos los primeros dos eslabones del análisis apelativo sobre las solicitudes de sentencia sumaria, ahora procedemos a evaluar como tercer paso si en realidad existen hechos materiales en controversia.

En el presente caso, el foro primario denegó la solicitud de sentencia sumaria de la parte peticionaria dado a que existía controversia respecto a si la cantidad de $8,746,529 como cargo por factura impresa constituyó un daño sufrido por la parte recurrida. Surge del tracto procesal que previo a dicha determinación, el TPI informó a las partes por medio de una *Resolución y/u orden* del 3 de julio de 2025 que "el Tribunal acepta la Solicitud de Sentencia Sumaria presentada por la parte demandante <u>a los únicos efectos</u> de aclarar el siguiente hecho: 'La parte demandada acepta que entre los años 2011 al 2015 cobró la cantidad de $8,746,529 como cargo por factura impresa' ".[12] (Énfasis suplido). Además, indicó que no admitiría dicho hecho como un daño; en cambio, los daños se adjudicarían en el juicio en su fondo y no sumariamente. Así, proveyó un término a la parte peticionaria para exponer su posición. A esos fines, la parte peticionaria aceptó el antedicho hecho como incontrovertido.[13] Específicamente, lo admitió como la cantidad cobrada por Choice en concepto del cargo por factura impresa, más no como una admisión y/o estipulación sobre la existencia ni cuantía de los daños reclamados por la parte recurrida.

Asimismo, el foro primario delimitó otros hechos controvertidos, al igual que hechos incontrovertidos. Insatisfecha, la

---

[12] *Íd.*, Apéndice 13.
[13] *Íd.*, Apéndice 14.

parte peticionaria adujo que el TPI debió haber realizado determinaciones de hechos incontrovertidos adicionales, pues la parte recurrida incumplió con la Regla 36.3(c) de Procedimiento Civil, *supra*. En lo pertinente, esta dispone "[c]uando se presente una moción de sentencia sumaria y se sostenga en la forma provista en esta Regla 36, la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica como lo haya hecho la parte promovente". De un examen de la *Resolución* recurrida, el foro primario rechazó algunas determinaciones de hechos propuestas por la parte peticionaria por impertinentes al versar sobre el procedimiento de objeción de facturas, procedimientos investigativos en los que no participó la parte recurrida, y/o por tratarse de un asunto ocurrido posterior a la certificación de clase. Si bien la Regla 36.3(c) de Procedimiento Civil, *supra*, prohibía a la parte recurrida de descansar solamente en alegaciones, los hechos en controversia deben ser materiales; es decir, aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo. *Ramos Pérez v. Univisión*, *supra*, pág. 213. Como la parte peticionaria no demostró la pertinencia de las determinaciones de hechos rechazadas, el foro *a quo* no cometió el <u>tercer</u> señalamiento de error.

Ciertamente, existiendo hechos en controversia, estamos impedidos de pasar al último eslabón; es decir, revisar de *novo* si el TPI aplicó correctamente el derecho en cuanto a la reclamación de enriquecimiento injusto e incumplimiento de contrato por factura impresa abarcados en el <u>segundo</u> y <u>cuarto</u> planteamiento de error. *Meléndez González et al. v. M. Cuebas, supra*, pág. 119.

Ahora bien, bajo el primer señalamiento de error, la parte peticionaria sostuvo que el foro primario incidió como cuestión de derecho al no concluir sumariamente que el cargo por el envío de la

factura en papel era legal dado a que *no estaba prohibido, regulado ni limitado por ley o reglamento alguno*. No le asiste razón. Ello pues, la propia Ley de Telecomunicaciones, *supra*, contempla en sus definiciones la industria de Cable TV bajo el término "[c]ompañía de cable". Específicamente, dicho estatuto define este último como "cualquier persona que posea, controle, opere o maneje cualquier planta, equipo y facilidades que se utilicen para recibir, amplificar, modificar y distribuir por cable coaxial, de fibra óptica, metal o de cualquier índole, la señal originada por una o más estaciones de televisión, servicio de programación que sea transmitida por medios alámbricos, inalámbricos, por satélite o cualquier otro medio". Artículo 3(k) de la Ley de Telecomunicaciones, *supra*, sec. 265a. Por tal razón, el foro primario no incurrió en el <u>primer</u> error luego de determinar que la postura asumida por la parte peticionaria, en cuanto a que Choice podía imponer cualquier cargo y modificarlo e incluso aumentarlo porque "no hay nada que se lo prohíba,"[14] era incorrecta.

## IV.

Por las razones discutidas anteriormente, expedimos el auto de *certiorari* y confirmamos el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[14] *Íd.*, Apéndice 21, pág. 3.